UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>D. LOPEZ,<br><br>    Defendant. | Case No. 14-cv-03013-DMR<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 30 |

Before the court is an unopposed motion to enforce the Settlement Agreement filed by Plaintiffs Board of Trustees of the Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California. [Docket No. 30]. This matter is suitable for resolution without a hearing. Civ. L.R 7-1(b). For the reasons stated below, the court grants Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs are employee benefits trust funds established through collective bargaining agreements between the Northern California District Council of Laborers and employer associations representing construction industry employers doing business in Northern California. Complaint ("Compl.") ¶ 3 [Docket No. 1]. Plaintiffs are governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3) and (37), and Section 302 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186. Compl. ¶ 3 [Docket No. 1]. Defendant D. Lopez is an employer within the meaning of ERISA and the LMRA. Compl. ¶ 3 [Docket No. 1].

On July 1, 2014, Plaintiffs filed this action under ERISA and LMRA to recover unpaid

benefit contributions, liquidated damages and interest, attorneys' fees and costs, and to obtain an injunction requiring an audit of Lopez's books and records. *See generally* Compl. According to the complaint, Lopez agreed to make timely employer contributions to the Trust Funds, but failed to do so. *Id*. ¶¶ 10, 13-14.

On February 23, 2015, the parties executed the Settlement Agreement, in which Lopez agreed to pay the outstanding trust fund contributions for the period of October 2012 through December 2014. Settlement Agreement (Ex. A to Declaration of Michelle Lauziere ("Lauziere Decl.") [Docket No. 31]; Lauziere Decl. ¶ 5.

Under the Settlement Agreement, Lopez agreed to pay outstanding trust fund contributions for the period of October 2012 through March 2014, totaling $113,950.00, as forty-eight equal monthly installments of $2,373.96 starting August 25, 2015 until the balance was paid in full. Settlement Agreement ¶ 2. He also agreed to pay outstanding trust fund contributions for the period of April 2014 through December 2014, totaling $124,079.62, as six equal monthly installments of $20,679.94 by July 25, 2015. *Id*. ¶ 1.

The Settlement Agreement provides that in the event Lopez fails to make a required monthly installment payment, he must cure the cure the default within 10 days of receipt of a written notice of default sent to his e-mail address, lopezconcrete@gmail.com. Settlement Agreement, ¶ 4. If he fails to cure the default in 10 days, the entire remaining balance under the Settlement Agreement is immediately due and payable. *Id*.

On March 12, 2015, the parties filed a Stipulation for Dismissal Without Prejudice and Retention of Jurisdiction, requesting that the court dismiss the case without prejudice, and retain jurisdiction to enforce the Settlement Agreement should any disputes arise. Stipulation for Dismissal Without Prejudice and Retention of Jurisdiction ("Stipulation for Dismissal") [Docket No. 28]. The court granted the Stipulation for Dismissal on March 16, 2015, and agreed to "retain jurisdiction over this matter to enforce the [Settlement] Agreement should any action be required to enforce the [Settlement] Agreement after the dismissal without prejudice is entered by the [c]ourt." Order Granting Stipulation for Dismissal [Docket No. 29].

On February 8, 2018, Plaintiff filed this motion to enforce the Settlement Agreement.

[Docket No. 30]. According to Plaintiffs, Lopez is in default pursuant to the Settlement Agreement because he has failed to make required monthly installment payments of $2,373.96 since July 2017, and has not cured the default.[1] Plaintiffs seek an order requiring Lopez to pay the entire remaining balance due of $35,561.24 pursuant to paragraph 4 of the Settlement Agreement. Plaintiffs also request an award of attorneys' fees in the amount of $2,899.00 which they incurred in enforcing the Settlement Agreement pursuant to paragraph 7 of the Settlement Agreement.

Lopez did not opposed the motion.

## II. LEGAL STANDARD

It is undisputed that the court has jurisdiction to enforce the Settlement Agreement. *See* Order Granting Stipulaton of Dismissal; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81 (1994) (explaining that a court has ancillary jurisdiction to enforce a settlement agreement when the parties agree to continuing or retention jurisdiction).

A "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (citation and internal quotations marks omitted). Thus, "the court may hear evidence and make factual determinations." *Fair Hous. Council of Cent. Cal., Inc. v. Tylar Prop. Mgmt. Co.*, 975 F. Supp. 2d 1115, 1118 (E.D. Cal. 2012) (citing *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996)). A court may order compliance with a settlement agreement in light of evidence of a party's non-compliance. *See, e.g., Fisher v. Biozone Pharm., Inc.*, No. 12-CV-03716-LB, 2017 WL 1097198, at *1 (N.D. Cal. Mar. 23, 2017) (prohibiting the plaintiff from "making any further disparaging comments about the defendants" in violation of the settlement agreement's non-disparagement term, and ordering the plaintiff to fully comply with the "settlement agreement's non-disparagement term").

"The interpretation of a settlement agreement is governed by principles of state contract

---

[1] Plaintiffs represent that Lopez paid the $124,079.62 balance in full, Lauziere Decl. ¶ 7, so the only balance at issue in this motion is $113,950.00 for unpaid trust fund contributions for the period of October 2012 through March 2014.

3

law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990)). "This is so even where a federal cause of action is 'settled' or 'released.'" *Id.* (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). Here, California contract law governs the analysis because the parties litigated and settled the case in this state. "Under California law, the goal of contractual interpretation is to give effect to the mutual intention of the parties." *Ambat v. City & Cty. of San Francisco*, No. C 07-03622 SI, 2011 WL 2118576, at *2 (N.D. Cal. May 27, 2011) (citing *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)). "The mutual intention of the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties." *Ambat*, 2011 WL 2118576, at *2 (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Ct. App. 1998); *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1814 (Ct. App. 1994)).

## III. DISCUSSION

### A. Default on Required Monthly Payments

Paragraph 2 of the Settlement Agreement requires Lopez to pay $113,950.00 in outstanding trust fund contributions as forty-eight equal monthly installments of $2,373.96 starting August 25, 2015 until the balance is paid in full. In the event he fails to make a required monthly installment payment, paragraph 4 of the Settlement Agreement requires him to cure default within 10 days of receipt of a written notice of default. If he fails to cure the default, then the entire remaining balance under the Settlement Agreement becomes immediately due and payable.

The unrebutted evidence shows that Lopez is in default pursuant to the terms of the Settlement Agreement. The record shows that he has failed to make required monthly installment payments of $2,373.96 since July 2017, and made only partial installments payments from August 2017 through November 2017. Lauziere Decl. ¶¶ 7, 9; Ex. B to Lauziere Decl. [Docket No. 31]. Additionally, he received a written notice of default and failed to cure the default within 10 days. Richman Decl., ¶ 3. Plaintiffs sent Lopez a notice of default by e-mail on December 12, 2017, requesting that he cure the default on or before December 22, 2017. December 12, 2017 e-mail

from Ron Richman, Plaintiffs' counsel, to Davis Lopez Concrete ("December 12, 2017 notice of default") (Ex. A) to the Declaration of Ronald L. Richman ("Richman Decl.") [Docket No. 32]; Richman Decl., ¶ 3. Lopez did not respond to the December 12, 2017 notice of default, nor did he make any attempts to cure the default. Richman Decl., ¶ 3; Lauziere Decl. ¶ 11; Ex. B to Lauziere Decl. Accordingly, the court finds that Lopez is in default pursuant to the terms of the Settlement Agreement.

Since Lopez failed to cure the default, the entire remaining balance under the Settlement Agreement of $35,561.24 is immediately due and payable. Settlement Agreement, ¶ 4; Lauziere Decl. ¶ 11; Ex. B to Lauziere Decl.

### B. Attorneys' Fees

Paragraph 7 of the Settlement Agreement provides in relevant part that "[i]n any action to enforce this Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred in enforcing this Agreement."

Under California law, "[e]xcept as attorney's fees are specifically provided by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties." Cal. Civ. Proc. Code § 1021. In an action for breach of contract, where the contract "specifically provides [for] attorney's fees and costs," the "court may award attorneys' fees and costs to the prevailing party." Cal. Civ. Code § 1717(a). "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1).

The court finds that Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to paragraph 7 of the Settlement Agreement. Plaintiffs prevailed on all issues raised in their motion.

The court now turns to the appropriate amount to be awarded in this case. Plaintiffs request $2,899.00 in attorneys' fees incurred in enforcing the Settlement Agreement. In support of the request, they submit the Richman Declaration [Docket No. 32] and detailed billing invoices, Ex. B to Richman Decl. [Docket No. 32].

District courts in the Ninth Circuit typically employ the "lodestar analysis" in calculating

5

fee awards. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 1579705, at *6 (9th Cir. Apr. 20, 2016) (internal citation omitted).

The party seeking fees bears the initial burden of establishing the hours expended litigating the case, and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). The requesting party also has the burden to demonstrate that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citations omitted). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Fee awards calculated under the lodestar method generally are presumed to be reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208–09 (9th Cir. 2013). At the same time, the court may adjust this figure "if circumstances warrant" in order "to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In addition, the Ninth Circuit has stated that a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).

6

The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community . . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 896, n.11. Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community as well as rate determinations in other cases can provide evidence of the prevailing market rate. *Welch*, 480 F.3d at 947 (citing *Phelps Dodge Corp.*, 896 F.2d at 407). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Phelps Dodge Corp.*, 896 F.2d at 407.

Plaintiffs seek the following hourly rates: $345 for lead counsel Ronald L. Richman and $175 for paralegal Kristina Clark. Ronald L. Richman is a senior shareholder at Bullivant Houser Bailey PC. Richman Decl. ¶ 4. He has been practicing law for over 34 years, 29 in California, and has over 23 years of experience handling ERISA Trust Fund litigation. *Id*. He has represented Plaintiffs since 1995. *Id.*

The court finds that Richman's requested hourly rate of $345 is within the prevailing market rates for ERISA attorneys with similar experience and qualifications in the San Francisco Bay Area community. *See, e.g., Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Torres*, No. C-12-02633 DMR, 2014 WL 5692462, at *5 (N.D. Cal. Nov. 4, 2014) (approving Richman's hourly rate of $345 in ERISA case).

The court also finds that paralegal Clark's requested hourly rate of $175 is reasonable. *See, e.g., Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*, No. C 11-1699 CW, 2013 WL 2297037, at *4 (N.D. Cal. May 24, 2013) (approving 2013 hourly rates between $180.00 and $225.00 per hour for law clerks and paralegals).

Turning to the number of hours for which Plaintiffs seek reimbursement, Plaintiffs seek a total of 8.2 hours for Richman's work and 0.4 hours for Clark's work in enforcing the Settlement Agreement. Richman Decl. ¶ 6. Having reviewed the detailed billing invoices, the court finds that the time spent on 12/11/17, 1/3/18, 1/4/18, 1/11/18, 1/16/18, 1/13/18, and 2/5/18 was

reasonably expended or incurred in enforcing the Settlement Agreement. According to the detailed billing invoices, Richman communicated to Plaintiffs about the status of the installment payments under the Settlement Agreement and Lopez's default, reviewed the Settlement Agreement, and drafted and revised the motion to enforce the Settlement Agreement. However, the court finds that the work performed on 1/29/18 was not reasonably expended because the tasks do not appear to be related to the enforcement of the Settlement Agreement. According to that billing entry, Richman billed 1.0 hours for working on a "motion to enforce judgment and new complaint." Ex. B to Richman Decl. Since Plaintiffs are not seeking to enforce the judgment or to file a new complaint, the court declines to award the 1.0 hours requested for work performed on 1/29/18. The court therefore awards 7.2 hours for Richman's work.

The court finds that the 0.4 hours requested for Clark were reasonably incurred. According to the billing entry for December 5, 2017, Clark spent 0.4 hours emailing Plaintiffs about the status of the settlement installment payments and Lopez's current contributions and reports. Ex. B to Richman Decl.

In total, the court awards Plaintiffs $2,554.00 in attorneys' fees, which breaks down as follows: Richman (7.2 hours x $345.00 = $2,484.00) and Clark (.4 hours x $175.00 = $70.00).

## IV. CONCLUSION

In conclusion, the court grants Plaintiffs' motion. The remaining balance of $35,561.24 is immediately due and payable by Lopez. The court also orders Lopez to pay $2,554.00 in attorneys' fees incurred in enforcing the Settlement Agreement within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: May 8, 2018



Donna M. Ryu
United States Magistrate Judge

8